FUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHANEQUA ORTIZ,

               Plaintiff,

– *against* –

CITY OF NEW YORK and NEW YORK
DEPARTMENT OF CORRECTION,

               Defendants.

**OPINION & ORDER**

19 Civ. 7887 (ER)

RAMOS, D.J.:

      Shanequa Ortiz, proceeding pro se, alleges that the City of New York ("the City") and New York City Department of Correction ("DOC") violated her Eighth Amendment constitutional rights to adequate medical treatment, humane conditions of confinement, and freedom from excessive force pursuant to 42 U.S.C. § 1983. The Court previously dismissed Ortiz's First and Second Amended Complaints in their entirety. *See Thomas v. Martin-Gibbons*, No. 19 Civ. 7695 (ER), 2020 WL 5026884 (S.D.N.Y. Aug. 25, 2020); *see also* Doc. 113. Pending before the Court is Defendants' motion to dismiss Ortiz's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 116. For the reasons discussed below, the motion is GRANTED.

    **I.    FACTUAL BACKGROUND**

      The Court assumes familiarity with its prior opinion in this matter. *See Thomas*, 2020 WL 5026884. This action arises from a child custody dispute in which Ortiz was held in contempt on two separate occasions for failing to produce her child, J.O., to J.O.'s father. *Id.* at 2. On the first occasion, on August 25, 2017, Ortiz was remanded into the custody of the DOC at Rikers Island for twenty-four hours. *See* Doc. 114 ¶ 4. Ortiz alleges that, while at Rikers, she was injured as a

result of the negligence of correction officers, as they forced her to sit on a bench that was "deranged to sit on" and was "in violation of code standards for human beings to sit on." *Id*. Ortiz also alleges that the bench caused her muscles to tighten, which resulted in difficulty walking after her release and being "medically assigned" crutches for a week. *Id*.

Ortiz was again held in contempt and remanded into the DOC's custody on September 7, 2017. *See id.* ¶ 5. Ortiz alleges that, while being transported to a holding cell, she was handcuffed so tightly for a period of three hours that she began to lose circulation and felt tingles in her hands, numbness throughout her arms, and lightheadedness. *Id*. Ortiz also claims that she told a correction officer about the discomfort, but that the officer did nothing. *Id*. Ortiz further alleges that she did not receive medical attention for twenty-four hours, and was tended to only because an inmate, after noticing her injuries, intervened on her behalf to a captain. *Id*. Although Ortiz lists a number of possible medical conditions that can result from handcuffing—such as neuropraxia to the radial nerve, damage to the ulnar or median nerve, or fractures—she fails to specify whether she suffered from any of those injuries as a result of the handcuffing. *See id*. ¶ 2.

Unlike in prior iterations of the complaint, Ortiz also alleges that her Eighth Amendment rights were violated after being transported on a co-ed bus from the family court to Rikers. *Id.* ¶¶ 7–9. Ortiz claims that she was the only female on the bus and that she was verbally sexually harassed by the male inmates and was a witness to a stabbing. *Id*. Ortiz also alleges that New York State and DOC rules and regulations require that male and female inmates be transported on different vehicles and that civil inmates should not be transferred on the same bus as "federal and supreme inmates." *Id.*

## II. PROCEDURAL HISTORY

Ortiz filed her original complaint on August 22, 2019, alleging claims against various governmental entities and individuals, and private individuals.[1] Doc. 2. Ortiz filed her First Amended Complaint on November 19, 2019. Doc. 63. The Court dismissed the First Amended Complaint on August 25, 2020 but granted Ortiz leave to re-file an amended complaint to clarify her claims against the City. Doc. 107 at 20. More specifically, Ortiz was permitted to address only her claims related to her alleged injury resulting from being made to sit on a defective bench in August 2017, improper strip-search,[2] and alleged injury resulting from being handcuffed too tightly in September 2017. *Id.* Ortiz filed her Second Amended Complaint on September 30, 2020. *See* Doc. 112. The Court dismissed the Second Amended Complaint on October 20, 2020 because Ortiz made allegations outside of the scope permitted by the Court's August 25, 2020 Order. *See* Doc. 113 at 1. Ortiz was, however, permitted to file a third amended complaint ("TAC"). *Id.* at 2. On November 20, 2020, Ortiz filed her TAC, listing only the City and the DOC as defendants. Doc. 114.

On December 11, 2020, Defendants filed the instant motion. *See* Doc. 117.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all

---

[1] The first complaint named as defendants the City of New York, the State of New York, the New York City Department of Correction, the Department of Health, Brooklyn's Children's Law Center, Judge Robert Mulroy, Dana J. Wilson-Haynes, Carl J. Haynes, Patricia L. Martin-Gibbons, Esq., Ms. Ritter, Mr. Montgomery, Martha Schneiderman, Cynthia Lee, Dawn Post, and Karen Simmons. *See* Doc. 2.

[2] Ortiz previously alleged that she was subject to a strip-search, where she was "told to lift up certain body parts to check for contraband in front of officers and other female inmates." Doc. 88 ¶19. However, the TAC is devoid of any allegations related to the strip-search. *See* Doc. 114.

3

reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Courts should read pro se pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). The obligation to read a pro se litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

### IV.  DISCUSSION

As an initial matter, Ortiz's claims against the DOC must be dismissed. Under the New York City Charter, "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter ch. 17, § 396. Based on that provision, courts in this Circuit have concluded that the DOC cannot be sued "because an agency of the City of New York is a non-suable entity." *See Doe v. NYC Dep't of Corr.*, No. 19 Civ. 9338 (AT), 2019 WL 6998276, at *1 (S.D.N.Y. Dec. 20, 2019); *see also Jenkins v. City of New York*, 478 F.3d

76, 93 n.19 (2d Cir. 2007). Accordingly, the Court dismisses Ortiz's claims against the DOC. *See Doe*, 2019 WL 6998276 at *1.

The Court also concludes that Ortiz's claims against the City should be dismissed. The City may not be held liable in an action under 42 U.S.C. § 1983 for the actions of its employees solely because it employed them. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, "[i]n order to establish municipal liability, a plaintiff must show that the violation of [her] constitutional rights resulted from a municipal custom or policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation omitted); *see also Walker v. City of New York*, No. 14 Civ. 808 (ER), 2015 WL 4254026, at *5 (S.D.N.Y. July 14, 2015). Although a plaintiff may use circumstantial proof of such a custom or policy, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo*, 141 F.3d at 61 (internal quotation omitted); *see also Adkins v. City of New York*, No. 19 Civ. 03628 (GBD) (DF), 2020 WL 2950979, at *6 (S.D.N.Y. Jan. 3, 2020).

The Second Circuit has established a two-part test for § 1983 claims brought against a municipality. First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 09426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quotation marks omitted) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir.1985)). To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent

> that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Cuellar v. Love*, No. 11 Civ. 3632 (NSR), 2014 WL 1486458, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of her constitutional rights. *Id.* at 9. Lawsuits brought against officers in their official capacity are directed at the office itself." *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) (citation, alternation, and quotation marks omitted); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" (citation and quotation marks omitted)). Therefore, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Walker*, 2015 WL 4254026 at *5 (quoting *Hafer*, 502 U.S. at 25).

As to the first part of the test, Ortiz does not allege that the City adopted a formally recognized policy under the first prong, nor does she suggest that any of the individual unnamed officers are sufficiently senior to qualify as policymakers. *See Cuellar*, 2014 WL 1486458, at *10; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (O'Connor, J., plurality opinion) (noting that only municipal officials who have "final policymaking authority" with respect to the activities that allegedly violated a plaintiff's constitutional rights "may by their actions subject the government to § 1983 liability"). As other courts in this Circuit have emphasized, merely asserting that the alleged wrongdoing by individual City personnel was "part of a policy or custom employed by Defendant[s]" is insufficient to allege a *Monell* claim. *Johnson*, 2011 WL 666161 at *3. Here, Ortiz alleges wrongdoing on behalf of unnamed DOC officers, but she neither points to any policy or custom by the City that could have resulted in her alleged injuries nor alleges that those officers are supervisors or policymakers.

The TAC also lacks factual allegations to demonstrate a consistent and widespread practice by the City. Here, Ortiz alleges only a number of single incidents—namely, that she was made to sit on a defective bench, that she was handcuffed too tightly, and that she was transported with male prisoners. Ortiz never alleges that these incidents occurred more than once, nor does she allege that the City has been responsible for similar incidents in the past. Accordingly, Ortiz's alleged treatment at the hands of unnamed officers below the policy-making level, do not suffice to show a widespread practice by the City. *See DeCarlo*, 141 F.3d at 61; *see also Johnson*, 2011 WL 666161, at *4.

Finally, the TAC does not allege failure to train or supervise. In this Circuit, to qualify as a custom or policy, a plaintiff must show that: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Johnson*, 2011 WL 666161, at *4 (citing to *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)). Ortiz has not "pled any facts that plausibly allege a specific deficiency in the training or supervision program that accounts for deprivation of [her] constitutional rights." *Marte v. N.Y.C. Police Dep't*, No. 10 Civ. 3706 (PKC), 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) (collecting cases). Moreover, Ortiz has not "pled facts suggesting that the constitutional deprivations [she] suffered were the consequence of training or supervisory deficiencies." *Id*. And Ortiz does not "identify procedural manuals or training guides, nor does [she] highlight relevant particular aspects of police training or supervision." *Id*. Accordingly, the Court concludes that Ortiz fails to allege successfully the existence of a custom or policy.

Even assuming, *arguendo*, that Ortiz has pled sufficient facts to satisfy the first part of the Second Circuit's two-part test, the TAC is devoid of factual allegations plausibly suggesting an affirmative link between a policy or custom and the alleged constitutional deprivations. "The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *see also Johnson*, 2011 WL 666161, at *4. Indeed, "[a]bsent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 277 (S.D.N.Y. 2010). Ortiz has pled no facts to show that some policy or custom bears a causal link to the alleged constitutional violations—let alone that the policy or custom was the "moving force" behind the violations. Accordingly, Ortiz's factual allegations against the City are not sufficient to warrant municipal liability, and her § 1983 claim is therefore dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Ortiz's TAC is hereby dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion and close the case. Doc. 116.

It is SO ORDERED.

Dated: July 13, 2021
New York, New York

EDGARDO RAMOS, U.S.D.J.